## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Douglas Ledet, on behalf of himself and all others similarly situated, Plaintiff | : | CIVIL ACTION |
| v. | : | |
| Ascentive, LLC, a Delaware Limited Liability Company | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( x )

| | | |
|---|---|---|
| January 18, 2011 | David S. Senoff, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 609-1350 | (215) 609-1351 | dsenoff@cbmclaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: P.O. Box 32, Sedeka, MN 56477

Address of Defendant: 201 Spring Garden Avenue, Suite 400, Philadelphia, PA 19123

Place of Accident, Incident or Transaction: Philadelphia, Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐   No☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
(Please specify)
Breach of Contract

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, David S. Senoff, Esquire _____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: January 18, 2011     _~David S. Senoff~_     65278

              Attorney-at-Law            Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: January 18, 2011     _~David S. Senoff~_     65278

              Attorney-at-Law            Attorney I.D.#

CIV. 609 (6/08)

◆JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Douglas Ledet, on behalf of himself and all others similarly situated | Ascentive, LLC, a Delaware Limited Liability Company |

**(b)** County of Residence of First Listed Plaintiff    Wadena, Minnesota
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)    David S. Senoff, Esq.
Caroselli Beachler McTiernan & Conboy, 1500 Walnut St., Ste 507
Philadelphia, PA 19102 (215) 609-1350

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
　　　Plaintiff

☐ 2  U.S. Government
　　　Defendant

☐ 3  Federal Question
　　　(U.S. Government Not a Party)

☒ 4  Diversity
　　　(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)　　　　　　　　　　　　　and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | ☐ 610 Agriculture ☐ 620 Other Food & Drug | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment ☐ 410 Antitrust |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** ☐ 820 Copyrights | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. ☐ 660 Occupational | ☐ 830 Patent ☐ 840 Trademark | Corrupt Organizations ☐ 480 Consumer Credit |
| & Enforcement of Judgment ☐ 151 Medicare Act | ☐ 340 Marine ☐ 345 Marine Product | **PERSONAL PROPERTY** ☐ 370 Other Fraud | Safety/Health ☐ 690 Other | | ☐ 490 Cable/Sat TV ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans | Liability ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending ☐ 380 Other Personal | **LABOR** ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| (Excl. Veterans) ☐ 153 Recovery of Overpayment | ☐ 355 Motor Vehicle Product Liability | Property Damage ☐ 385 Property Damage | Act ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| of Veteran's Benefits ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | Security Act | or Defendant) ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access |
| ☐ 240 Torts to Land ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty ☐ 540 Mandamus & Other | **IMMIGRATION** ☐ 462 Naturalization Application | | to Justice ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | Employment ☐ 446 Amer. w/Disabilities - | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | State Statutes |
| | Other ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original
　　　Proceeding

☐ 2  Removed from
　　　State Court

☐ 3  Remanded from
　　　Appellate Court

☐ 4  Reinstated or
　　　Reopened

☐ 5  Transferred from
　　　another district
　　　(specify)

☐ 6  Multidistrict
　　　Litigation

☐ 7  Appeal to District
　　　Judge from
　　　Magistrate
　　　Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332 (d)
Brief description of cause:
Plaintiff brings Class Action Complaint against Defendant for acts of fraud in conjunction with the sale of its products.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
　 UNDER F.R.C.P. 23

DEMAND $
excess of $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE   1/18/2011

SIGNATURE OF ATTORNEY OF RECORD   David S. Senoff

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

1
2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

3
4
5
6
7
8
9
10

| | |
|---|---|
| Douglas Ledet, on behalf of himself and all others similarly situated, | : |
| | : |
| Plaintiff, | : Civil Action No:_____ |
| | : |
| v. | : |
| | : |
| Ascentive LLC, a Delaware Limited Liability Company, | : COMPLAINT – CLASS ACTION |
| | : |
| Ascentive. | : **JURY TRIAL DEMANDED** |

11
12
13
14
15

Plaintiff Douglas Ledet for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigation conducted by his attorneys:

16

## NATURE OF THE ACTION

17
18
19
20
21
22
23

1.      Plaintiff Douglas Ledet brings this Class Action Complaint against Ascentive Ascentive, LLC ("Ascentive") for acts of fraud perpetrated in conjunction with the sale of Ascentive's software products.  In clear contradiction to the law, and Ascentive's public assertions, Ascentive has designed its software to defraud consumers by deceiving them into paying fees to fix fabricated and/or overstated computer problems.  In essence, Ascentive falsely identifies computer problems and characterizes them as "severe" in an attempt to scare consumers into purchasing its software.

24
25
26
27

2.      Ascentive sells a variety of software packages that Ascentive claims will increase the speed and performance of a consumer's personal computer ("PC") and Internet connection. Ascentive's most popular software product is "PC SpeedScan Pro," (hereinafter "SpeedScan

28

COMPLAINT

Pro" or "PC SpeedScan Pro") which Ascentive sells through numerous websites, including: www.FinallyFast.com, www.FastAtLast.com, www.SpeedScanPC.com, www.ScanYourPC.com, www.FinallyFastPC.com, www.PCFinallyFast.com, and www.Ascentive.com.

   3.    Ascentive asserts through its website that its software products can instantly remove all computer errors found, and return a consumer's PC to its original high performance. Specifically, "PC SpeedScan performs a comprehensive search of your computer to locate and remove error and invalid files.  PC SpeedScan can help improve your computer's overall performance by getting rid of these unwanted files."  *See,* Exhibit A, attached hereto as a true and accurate copy of the index page of Ascentive's website, www.FinallyFast.com.

   4.    In actuality, the motive behind Ascentive's SpeedScan Pro software is far more sinister.  Ascentive's *modus operandi* is to offer a "free diagnosis" to anyone who owns a computer.  Regardless of whether errors are actually present on a consumer's PC, Ascentive's software invariably indicates, in an extremely threatening manner, that dozens of "severe" errors exist.  Ascentive then offers to remove these fabricated errors, in exchange for $29.95.

   5.    Ascentive markets PC SpeedScan Pro as a software product, however, purchasing customers are actually made to inadvertently sign-up for a yearly recurring subscription service. Ascentive does not conspicuously disclose this information, and Ascentive stifles consumer attempts to reverse these undesired charges.

   6.    When a consumer downloads PC SpeedScan Pro, or any other software developed by Ascentive, Ascentive surreptitiously installs an additional application called the "Acentive Performance Center" onto the consumer's PC.  This application, installed without permission of the user, is designed to conduct ongoing "scans" of the consumer's PC and recommend the purchase of additional software from Ascentive.   These recommendations are displayed in exasperating excess, usually in the form of ominous "pop-ups."   These pop-up warnings supposedly alert the user about errors or nefarious spyware that is on the consumer's PC and

COMPLAINT

2

1 | requires immediate action by the consumer.  The Ascentive Performance Center is little more

2 | than a marketing ploy by Ascentive to induce consumers to purchase its other products.

3 |        7.      Customers that recognize the deceptive nature of Ascentive's software and

4 | demand to receive their money back are met with unfair and deceptive business practices by

5 | Ascentive that make it virtually impossible to receive a refund.

6 |        8.      To induce users into paying for Ascentive's products described *supra*, Ascentive

7 | has engaged in misleading and false advertising practices.

8 |        9.      Accordingly, thousands of consumers have been unlawfully tricked into paying

9 | for Ascentive's nefarious software with no recourse to recover their costs.

10 |      10.      In sum, Ascentive has intentionally engaged in a systematic pattern of fraud and

11 | deception through the design of its software products and its advertising practices.  Ascentive's

12 | actions not only demonstrate a complete lack of regard for consumer rights, but also violate

13 | numerous state laws.

14 | **PARTIES**

15 |      11.      Plaintiff Douglas Ledet is a resident of Sebeka, Minnesota.

16 |      12.      Ascentive LLC is a Delaware Limited Liability Company with its headquarters

17 | and principal place of business at 201 Spring Garden Street, Suite 400, Philadelphia, PA 19123.

18 | Ascentive does business throughout the State of Pennsylvania, the United States, and the world.

19 | **JURISDICTION AND VENUE**

20 |      13.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  At

21 | least one Class member is a citizen of a different State than Ascentive, and the amount in

22 | controversy exceeds, exclusive of interest, fees and costs, $5,000,000.00.  Plaintiff and the Class

23 | seek restitution and disgorgements of any funds improperly obtained by Ascentive, and seek

24 | injunctive relief as well as to recover damages, attorneys' fees, and costs.

25 |

26 |

27 |

28 |

COMPLAINT

14.     Personal jurisdiction and Venue are proper in this Court because Ascentive is a company headquartered in this district and/or because the improper conduct alleged in the Complaint occurred in, was directed from, and/or emanated or exported from Pennsylvania.

## FACTUAL BACKGROUND

### I. Ascentive Designed SpeedScan Pro to Intentionally Deceive Consumers By Recognizing False "Severe" Errors and Then Selling "Fixes" For These Non-Existent Problems.

15.     Upon downloading SpeedScan Pro, a user is directed to a supposed free diagnostic scan.  If the software discovers threats present on the system, the software will prominently and ominously display that information.

16.     In order to fix these errors, Ascentive requires that the user purchase Ascentive's software.

17.     What Ascentive does not inform the user, however, is that no matter if any problems actually exist on the consumer's PC, the software will invariably indicate that errors are present.  These errors, known as "false positives" because the software returns positive results that do not actually exist, are fabricated by Ascentive in an attempt to scare consumers into purchasing the software.

18.     In the simplest terms, Ascentive always claim that a user has PC errors, regardless of whether they exist or not.  In an effort to scare the consumer into purchasing the software, Ascentive displays these results in such a way that would frighten the average consumer into believing his or her computer is seriously jeopardized.  These results are always accompanied by ambiguous technical jargon, provided by Ascentive that is indecipherable to the average consumer, but appears ominous.

19.     Through his attorneys, Plaintiff has employed independent cyber security experts to investigate Ascentive's software.  The results of these tests have further unmasked the fraud being perpetrated by Ascentive.

20.     After a fresh installation of Windows 7 on a clean virtual PC, never connected to the Internet, SpeedScan Pro detected twenty-two (22) "severe" errors on the pristine, unused PC.

COMPLAINT

After purchasing the software and running the "fix" for these errors, a subsequent scan revealed that zero (0) errors existed on the PC.  However, and illustrative of the fraud **being committed** by Ascentive, after simply uninstalling and reinstalling SpeedScan Pro, Ascentive's **software** then indicated that ten (10) additional errors existed on the PC.

21.   Put another way, SpeedScan Pro first indicated that twenty-two (22) severe errors existed on a brand new PC, and after "fixing" these errors, returned an additional ten errors after simply uninstalling and re-installing the software.  The situation is clear then, either Ascentive's software itself is causing these "errors," or Ascentive is detecting false positives on consumers' PCs in an attempt to scare, and subsequently induce, the user to purchase its software.

22.   Upon information and belief, Ascentive's SpeedScan Pro software is unlawfully designed to return false positives.  Real errors detected by the software are indicated in such a way to exaggerate the severity of these problems.  The foregoing practices are done in an effort to deceive consumers into purchasing Ascentive's software.

**II. Ascentive surreptitiously bundles its own advertising/marketing application, the Ascentive Performance Center, with all of its software products and installs it onto consumers' PCs without permission to further perpetuate fraudulent sales.**

23.   Unbeknownst to consumers, Ascentive secretly bundles additional software with SpeedScan Pro and its other products.  This software, called the "Ascentive Performance Center," is installed seamlessly, in tandem, with SpeedScan Pro, or any other Ascentive product. The installation of this additional software is performed without the consumer's consent.

24.   Thereafter, ostensibly, the Ascentive Performance Center performs continuous "scans" of the user's computer, deploying pestering pop-up advertisements recommending that the individual purchase additional software from Ascentive to fix threatening "errors," junk files, or spyware present on the system.

25.   Although the Ascentive Performance Center is included in the installation of all of Ascentive's software products, it provides no meaningful functionality to consumers.  Its sole purpose is to alarm consumers and scare them into buying additional Ascentive products by

---

COMPLAINT

displaying frightening messages about impending harms that threaten their computers. These harms identified by Ascentive are almost completely fabrications or are vastly overly exaggerated trivial problems.

26.    Upon information and belief, many, if not all, of the errors identified by the Ascentive Performance Center are fictional, and/or overstated in such a way to induce users to purchase software from Ascentive.

27.    Upon information and belief, Defendant has intentionally bundled the Ascentive Performance Center with all of its products in an attempt to nefariously advertise its other software without the consent of consumers.

### III. Ascentive Deceptively Renews Subscriptions for its Services and Intentionally Makes the Cancellation Process Confusing and Arduous.

28.    Ascentive markets its products as stand-alone software; however, in actuality Ascentive sells annual licenses to *use* its software. Ascentive bills its customers on a recurring yearly-basis. In order to cancel, Acentive customers must take steps to affirmatively cancel their automatically-renewing license agreement, or else the credit card used to originally purchase Ascentive's software will be charged.

29.    Ascentive does not conspicuously inform consumers of its automatic renewal practices, and has implemented practices that make it extremely difficult for customers to cancel the yearly license agreement.

30.    Upon information and belief, Ascentive has intentionally designed its cancellation process to be extremely difficult in an effort to continue charging its customers renewal fees.

31.    Upon information and belief, Ascentive's cancellation process is unnecessarily onerous and designed in such a way as to encourage users to abandon the cancellation process, thereby securing additional renewal charges for Ascentive.

32.    Upon information and belief, Ascentive continues to charges its customers' credit cards, even after Ascentive receives notice of cancellation.

COMPLAINT

## IV. Ascentive's Advertisements are False and Misleading.

33.     Ascentive advertises its software products through numerous mediums, including radio, television, and the World Wide Web.

34.     In its commercials, Ascentive claims that **visiting www.FinallyFast.com can result** in the removal of junk files, spyware, adware, and **registry errors.** *See,* FinallyFast Commercial, http://www.youtube.com/watch?v=G5mGAUwMbXg **(last visited January 12, 2011).** The commercial further states that an individual can save "hundreds, if not thousands of dollars" by performing a free scan with the software located at Ascentive's website. *Id.* Ascentive asserts that its software "Makes Any PC Run Faster..." *Id.*

35.     Ascentive advertises heavily through the Internet by displaying advertisements in the form of banners splashed on the top or side of websites. Many of these advertisements are aesthetically similar to an error message displayed by popular operating systems, such as Windows XP.

36.     These advertisements inform the user, in a highly threatening manner, that errors exist on that individual's computer, and provide a link to "fix" these errors. Ascentive has chosen to display its advertisements this way in an attempt to deceive non-technical users into believing that the user's operating system is warning him or her about errors on their computer. These advertisements by Ascentive, posing as error messages, are deployed to trick the user into purchasing Ascentive software.

37.     None of these advertisements disclose the fact that its software will automatically install the Ascentive Performance Center, discussed *supra,* and continuously harass the user to purchase additional software from Ascentive. In fact, even if an individual performs a free scan with Ascentive's software and ultimately decides *not* to purchase the application, the Ascentive Performance Center will, nonetheless, continue to display ominous pop-up ads in an attempt to scare the user into purchasing additional software.

38.     Upon information and belief, Ascentive has intentionally designed its advertisements to a) deceive non-technical users into believing its advertisements are actually

1    warnings displayed by the individual's operating system, b) falsely report that the user's

2    computer has "errors," and c) to misrepresent and/or overstate the effectiveness of its software

3    products.

4    **V.  Plaintiff Douglas Ledet's Experience**

5        39.    In January of 2009, Ledet navigated to Ascentive's website and clicked on a link

6    that purported to perform a "free scan" of Ledet's computer.

7        40.    Included within the product downloaded from Defendant's website was the

8    Ascentive Performance Center.   Ledet did not consent to the installation of the Ascentive

9    Performance Center, and was unaware that this software would be simultaneously installed with

10   the PC SpeedScan Pro product.

11       41.    After the "free scan" was performed, a pop up window appeared on Ledet's

12   computer screen stating that SpeedScan Pro had detected "errors" on his PC.  The supposed scan

13   also informed him that by removing these errors, there would be improvement to his PC in

14   numerous ways. *See,* Exhibit B, attached hereto as a true and accurate copy of the results of an

15   Ascentive scan.

16       42.    As requested by Defendant, Ledet clicked on the "Fix Now" button and was

17   directed to a purchase screen wherein Ledet purchased the PC SpeedScan Pro for the price of

18   $29.95.

19       43.    However, as discussed above, at least some of the "errors" purportedly "detected"

20   by PC SpeedScan Pro were false positives that did not exist.

21       44.    Ascentive intentionally misrepresented that "errors" were "detected" on Ledet's

22   PC, and/or overstated the severity of problems that did exist on his computer.

23       45.    As the errors did not exist on Ledet's computer in the first place, PC SpeedScan

24   Pro failed to "fix" the computer or enhance the computer's speed.

25       46.    After installation, Ascentive's software continually displayed pop-ups on Ledet's

26   computer recommending that he purchase additional Ascentive software.

27

28

COMPLAINT

47.     Later in 2009, Ledet received an e-mail from Ascentive indicating that his credit card would be charged for a renewal of services in conjunction with PC SpeedScan Pro.

48.     Ledet sent Ascentive e-mails, traditional mail, and used Ascentive's online chat mechanism to inform Ascentive that it was not authorized to charge his credit card.

49.     Nevertheless, on April 20, 2010, Ledet received yet another e-mail indicating that his credit card would be charged by Ascentive.

## CLASS ALLEGATIONS

50.     Plaintiff Douglas Ledet brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on behalf of himself and a class and subclass of similarly situated individuals (the "Class") defined as follows:

(A) **The Fraudulent Purchase Class**: All individuals in the United States who have purchased Ascentive's software.

(B) **The Unauthorized Renewal Subclass**: All individuals whose subscriptions for products or services by Ascentive were renewed without authorization.

Excluded from the Class are Ascentive, its legal representatives, assigns, and successors, and any entity in which Ascentive has a controlling interest. Also, excluded is the judge to whom this case is assigned and the judge's immediate family.

51.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, Ascentive has contracted with thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class and Subclass members will be easily identified through Ascentive's records.

52.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class and Subclass. Plaintiff, the Class, and Subclass sustained damages as a result of Ascentive's uniform wrongful conduct during transactions with Plaintiff, the Class, and

1   Subclass.  Plaintiff's claims are typical of the claims of all of the other members of the Class and

2   Subclass.

3      53.   **Adequate Representation:**  Plaintiff will fairly and adequately represent and

4   protect the interests of the Class and Subclass, and has retained counsel competent and

5   experienced in complex litigation and class actions.  Plaintiff has no interests antagonistic to

6   those of the Class or Subclass, and Ascentive has no defenses unique to Plaintiff.  Plaintiff and

7   his counsel are committed to vigorously prosecuting this action on behalf of the members of the

8   Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any

9   interest adverse to those of the other members of the Class or Subclass.

10

11     54.   **Appropriateness:**  This class action is appropriate for certification because class

12  proceedings are superior to all other available methods for the fair and efficient adjudication of

13  this controversy and joinder of all members of the Class and Subclass is impracticable.  The

14  damages suffered by the individual members of the Class and Subclass will likely be small

15  relative to the burden and expense of individual prosecution of the complex litigation

16  necessitated by Ascentive's wrongful conduct.  Thus, it would be virtually impossible for the

17  individual members of the Class and Subclass to obtain effective relief from Ascentive's

18  misconduct.  Even if members of the Class and Subclass could sustain such individual litigation,

19  it would not be preferable to a class action because individual litigation would increase the delay

20  and expense to all parties due to the complex legal and factual controversies presented in this

21  Complaint.  By contrast, a class action presents far fewer management difficulties and provides

22  the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

23  court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will

24  be ensured.

25

26

27

28

COMPLAINT

55.   **Policies Generally Applicable to the Class:**  This class action is also appropriate for certification because Ascentive has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as a whole.  Ascentive's policies challenged herein apply and affect members of the Class and Subclass uniformly and Plaintiff's challenge of these policies hinges on Ascentive's conduct with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiff.  Ascentive has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class and Subclass.

56.   **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members:

　　　　a)   whether Ascentive has intentionally designed its software to deceive consumers into purchasing its products;

　　　　b)   whether Ascentive has breached its express warranties;

　　　　c)   whether Ascentive has intentionally engaged in false and misleading advertising;

　　　　d)   whether Ascentive's conduct described herein constitutes a breach of express warranties pursuant to the Pennsylvania Commercial Code;

e)      whether Ascentive's conduct described herein constitute a violation of the

Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1, *et*

*seq.*);

f)      whether Ascentive's conduct described herein constitutes a breach of

contract;

g)      whether Ascentive unjustly received and/or continues to receive money as

a result of its conduct described herein, and whether under principles of equity and good

conscience, Ascentive should not be permitted to retain those monies.

57.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

Definitions" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
**Breach of Express Warranties**
**Pursuant to 13 Pa. Cons. Stat. § 2313**
**(On Behalf of Plaintiff, the Class, and the Subclass)**

58.    Plaintiff incorporates by reference the foregoing allegations.

59.    Pursuant to Pennsylvania Commercial Code § 2313, the sale of Ascentive's

software was accompanied with an express warranty of merchantability created by affirmations

of facts and promises made by Ascentive through its advertising and websites.

60.    Plaintiff, the Class, and the Subclass, relied upon these affirmations and promises

when purchasing Ascentive's products and services.

61.    The express warranty of merchantability provided by Ascentive included

affirmations of fact and promises that its software would truthfully identify PC errors.  In

actuality, Ascentive designed its software to identify false positives to induce consumers into

purchasing its products and services.

62.    By serving this Complaint, Plaintiff, the Class, and the Subclass hereby give

Ascentive notice that it has breached its express warranty of merchantability. Plaintiff, the Class,

and the Subclass request maximum damages under the Pennsylvania Commercial Code.

COMPLAINT

1    63.    Accordingly, Plaintiff, the Class, and the Subclass are entitled to maximum

2   damages as provided by the Pennsylvania Commercial Code.

3                        **SECOND CAUSE OF ACTION**
    **Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
4                   **Pursuant to 73 P.S. § 201-1, et seq.**
                 **(On Behalf of Plaintiff, the Class, and the Subclass)**

5    64.    Plaintiff incorporates by reference the foregoing allegations.

6    65.    Ascentive engaged in a deceptive and misleading course of conduct and

7   advertising intended to deceive and significantly confuse consumers into purchasing its software

8   products, which constitutes unconscionable commercial practices, deception, fraud, false

9   promises, false pretenses and/or misrepresentations in its interactions with Plaintiff, the Class,

10  and Subclass in violation of the UTPCPL. (73 P.S. § 201-1, *et seq.*).

11   66.    Ascentive is a "person" as defined in the UTPCPL. (73 P.S. § 201-2(2)).

12   67.    Ascentive is/was engaged in "trade and "commerce" as defined in the UTPCPL.

13  (73 P.S. § 201-2(2)).

14   68.    Ascentive violated the UTPCPL by engaging in fraudulent and/or deceptive

15  conduct that created the likelihood of confusion or misunderstanding, as detailed herein. (73 P.S.

16  § 201-2(4)(xxi)).

17   69.    By and through the acts described herein, Ascentive represented that its services

18  had characteristics or benefits, which they do not, in fact, have in violation of the UTPCPL. (73

19  P.S. §§ 201-3 and 201-2(v)).

20   70.    Ascentive's misrepresentations in its advertisements, websites, and other

21  documentation were likely to mislead a reasonable consumer who was acting reasonably under

22  the circumstances into believing that Defendant's software would truthfully identify and remove

23  harmful errors from the user's PC, and would not deceptively install proprietary advertising

24  software on the individual's PC. Plaintiff, the Class, and Subclass relied on Ascentive's

25  misrepresentation to their detriment.

26

27

28

71.     Plaintiff, the Class, and Subclass suffered harm as a direct and proximate result of the violations of law and wrongful conduct of Ascentive.

72.     Accordingly, Ascentive is liable to Plaintiff, the Class, and Subclass for (i) actual damages pursuant to 73 P.S. § 201-9.2(a), (ii) statutory damages pursuant to 73 P.S. § 201-9.2(a) for each separate violation by Ascentive, (iii) treble damages pursuant to 73 P.S. § 201-9.2(a) for each separate violation by Ascentive, (iv) punitive damages against Ascentive, and (v) reasonable attorneys' fees and costs pursuant to 73 P.S. § 201-9.2(a).  In addition, Ascentive should be enjoined from further perpetrating the unlawful and wrongful acts described herein.

## THIRD CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff, the Class, and the Subclass)

73.     Plaintiff incorporates by reference the foregoing allegations.

74.     Plaintiff and members of the Class and Subclass entered into agreements with Ascentive whereby Ascentive agreed to sell and Plaintiff, the Class, and the Subclass agreed to give Ascentive a fixed amount in exchange for software that would remove threats from their computers.

75.     Ascentive expressly and/or impliedly agreed to provide Plaintiff, the Class, and the Subclass a product that would remove threats from their computer.

76.     Ascentive further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

77.     Ascentive breached its contractual obligations by providing Plaintiff and the Class and Subclass with false analysis that reported threats that did not exist, or inflated the true nature of threats, in order to sell services to the Plaintiff, Class, and the Subclass that were unneeded.

78.     Ascentive further breached its contractual obligations by providing a product that did not remove threats from its consumers' computers.

COMPLAINT

14

79.     Plaintiff, the Class, and the Subclass have performed their obligations under the contracts. The aforementioned breaches of contract have proximately caused Plaintiff, the Class, and the Subclass economic injury and other damages

## FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff, the Class, and the Subclass)

80.     Plaintiff incorporates by reference Paragraphs 1-56.

81.     Plaintiff hereby brings this claim in the alternative to his Breach of Contract claim.

82.     In order to benefit from Ascentive's supposed threat removal services, Plaintiff, the Class, and the Subclass affirmatively allowed Ascentive's software to be installed on their computers.

83.     Ascentive's agreement to install software to diagnose and remove threats from consumers' computers in exchange for fees is a valid and enforceable contract between Plaintiff, the Class, and the Subclass on the one hand, and Ascentive on the other.

84.     Ascentive breached the provisions of the agreement, specifically not honoring its responsibilities to perform truthful scans "to see which errors and corrupt files may be crippling your PC's performance." *See,* Exhibit A.

85.     Pennsylvania contract law recognizes the implied covenant of good faith and fair dealing in every contract.

86.     Implicit in the Agreement, along with the explicit provisions, were contract provisions that prevented Ascentive from engaging in conduct that frustrated or injured Plaintiff's, the Class's, and the Subclass's rights to receive the benefits of the Agreement.

87.     Ascentive has an affirmative obligation to honestly diagnose all problems from on consumers' computers and to honestly relate whether problems exist. This obligation is a material term of the agreement. Ascentive did not honor this obligation.

COMPLAINT

15

88.    Furthermore, implicit in the terms of the Agreement was Ascentive's obligation to comply with 73 P.S. § 201-1, *et seq.*, to be truthful in its advertisements, and accurately disclose the functionality of its software products.  Ascentive did not honor this obligation.

89.    Ascentive breached the implied covenant of good faith and fair dealing by failing to honestly and accurately inform consumers about the true nature of their computers, and further by failing to fully comply with the proscriptions of applicable statutory law.

90.    Ascentive's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff, the Class, and the Subclass.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff, the Class, and the Subclass)

91.    Plaintiff incorporates by reference Paragraphs 1-56.

92.    Plaintiff hereby brings this claim in the alternative to his Breach of Contract claim.

93.    Ascentive has knowingly received and retained benefits from Plaintiff, the Class, and Subclass under circumstances that would render it unjust to allow Ascentive to retain such benefits.

94.    By falsely informing Plaintiff, the Class, and Subclass that they needed to pay upfront monies to repair problems that did not exist on their computers, Ascentive knowingly received and appreciated benefits at the expense and to the detriment of Plaintiff, the Class, and Subclass.

95.    Ascentive's receipt of monies from Plaintiff, the Class, and Subclass, allowed it to utilize those monies for its own purposes, without expending resources to perform its obligations under the contract.

96.    Ascentive appreciates or has knowledge of that benefit.

COMPLAINT

97.     Under principles of equity and good conscience, Ascentive should not be permitted to retain the monies belonging to Plaintiff, the Class, and Subclass that they were paid and that Ascentive unjustly received as a result of its misconduct alleged herein.

98.     Accordingly, Plaintiff, the Subclass and the Class seek full disgorgement and restitution of any amounts Ascentive has retained as a result of the unlawful and/or wrongful conduct alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Douglas Ledet, on behalf of himself the Class and the Subclass, respectfully request that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Douglas Ledet as class representative, and appointing their counsel as class counsel;

B.     Declaring that Ascentive's actions, as set out above, violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1, *et seq.*), and constitute unjust enrichment, breach of contract, and breach of express warranties pursuant to 13 Pa. Cons. Stat. § 2313;

C.     Award damages, including statutory and punitive damages where applicable, to Plaintiff, the Class, and the Subclass in an amount to be determined at trial;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class and the Subclass, including, *inter alia*: (i) an order prohibiting Ascentive from engaging in the wrongful and unlawful acts described herein; and (ii) requiring Ascentive to disclose and admit the wrongful and unlawful acts described herein and (iii) requiring Ascentive to fully disclose the true nature of its software products in the future;

E.     Award Plaintiff, the Class, and the Subclass their reasonable litigation expenses and attorneys' fees;

F.     Award Plaintiff, the Class, and the Subclass pre- and post-judgment interest, to the extent allowable;

COMPLAINT

G.    Enter such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff, the Class, and the Subclass;

H.    Award such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

CAROSELLI, BEACHLER, McTIERNAN & CONBOY

By:  /s / David S. Senoff
David S. Senoff, Esquire
Richard C. DeFrancesco, Esquire
1500 Walnut Street, Suite 507
Philadelphia, PA 19102
T: (215) 609-1350
F: (215) 609-1351

Jay Edelson, Esquire*
William Gray, Esquire*
Ari J. Scharg, Esquire*
EDELSON McGUIRE, LLC
350 N. LaSalle St.
Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
* *Pro Hac Vice admission to be sought*

Dated: January 18, 2011