**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOUGLAS LEDET, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:11-CV-294-PBT |
| v. | ) ) ) | [Hon. Petrese B. Tucker] |
| ASCENTIVE LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNCONTESTED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND**
**APPROVAL OF ATTORNEYS' FEES AND INCENTIVE AWARD**

Class Counsel:

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
EDELSON MCGUIRE LLC
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60654

Local Counsel:

David S. Senoff
Richard C. Defrancesco
CAROSELLI BEACHLER MCTIERNAN & CONBOY LLC
1500 Walnut Street
Suite 507
Philadelphia, Pennsylvania 19102

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  NATURE OF THE LITIGATION .................................................................................. 3

     A.   Plaintiff's Allegations Regarding Ascentive's Use of "Scareware" ................... 3

     B.   Class Counsel's Investigation ........................................................................... 4

     C.   Litigation and Early Settlement Discussions ..................................................... 5

     D.   Renewed Settlement Discussions and Private Mediation ................................. 5

III. TERMS OF THE SETTLEMENT ............................................................................... 6

     A.   Class Definition ............................................................................................... 6

     B.   Monetary Relief ............................................................................................... 7

          1.   Payment of Claims and the Claims Process ............................................ 7

     C.   Service Improvements and Assurances ............................................................ 7

          1.   Software Purchase Agreement/Terms of Use Disclosures ....................... 7

          2.   Automatic Subscription Renewal Policies ............................................... 9

          3.   Software Modifications ........................................................................... 9

     D.   Incentive Award for Class Representative ...................................................... 10

     E.   Attorneys' Fees and Expenses ....................................................................... 10

     F.   The Release by Plaintiff and the Settlement Class .......................................... 10

IV.  THE PARTIES' COMPREHENSIVE NOTICE PLAN REACHED
     SEVENTY PERCENT OF THE CLASS AND COMPLIES WITH
     DUE PROCESS ....................................................................................................... 11

V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
     SETTLEMENT ........................................................................................................ 13

     A.   The Settlement is Deserving of Final Approval As it Satisfies
          the *Girsh* Test ............................................................................................ 14

|     |     | 1.  | The Complexity, Expense, and Likely Duration of Litigation Justify Final Approval of the Agreement ................................ 14 |

        **1.**    **The Complexity, Expense, and Likely Duration of Litigation Justify Final Approval of the Agreement** ................................ 14

        **2.**    **Class Members' Reactions to the Settlement Have Been Overwhelmingly Favorable** ........................................................ 15

        **3.**    **Class Counsel Had Sufficient Information to Evaluate the Merits and Reasonableness of the Agreement** ...................................... 16

        **4.**    **Establishing Liability and Damages Would be Risky and No Easy Task** ............................................................................ 18

        **5.**    **Maintaining Class Action Status Through Trial Would Not Be Certain** ...................................................................................... 19

        **6.**    **Ascentive's Ability To Withstand a Greater Judgment Is Not an Issue** .............................................................................. 20

        **7.**    **The Settlement Fund is Within the Range of Reasonableness In Light of the Recovery and the Attendant Risks of Litigation** .............. 21

**VI.**    **THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES ARE REASONABLE** .................................................................................. 22

    **A.**    **The Agreed-Upon Fee of $1,075,000 Represents 11% of the Cash Benefit to the Class and Is Reasonable Under the *Gunter* Factors** .................... 24

        **1.**    **The Size of the Fund Created and the Number of Persons Benefited** ............................................................................ 26

        **2.**    **There Have Been No Objections To The Settlement Terms Or Counsel's Fee Request** ...................................................... 26

        **3.**    **Class Counsel Have Extensive Experience in Similar Litigation and Were Efficient in This Matter** .......................................... 26

        **4.**    **Litigation Was Complex and Lasted Nearly a Year** ................ 27

        **5.**    **The Risk of Non Payment** .................................................... 27

        **6.**    **Plaintiff's Counsel Devoted Substantial Time and Resources to This Case** .......................................................................... 28

        **7.**    **Counsel's Fee Request Is Well Below Fees Granted in Similar Cases** ...................................................................... 28

      **B.**     **The Agreed-Upon Fee is Also Reasonable Under the Lodestar Method** ............29

**VII.**   **THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD** ........................................................................................31

**VIII.**  **CONCLUSION** ..........................................................................................................32

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................24

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ........................................11

*Hall v. Cole*, 412 U.S. 1 (1973) ...............................................................26

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................22

**United States Circuit Court of Appeals Cases:**

*Bell Atl. Corp. v. Bolger,* 2 F.3d 1304 (3d Cir. 1993) ......................................16

*Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799 (3d Cir. 1974)........................15

*Brytus v. Spang & Co.,* 203 F.3d 238 (3d Cir. 2000)........................................23

*Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977)............................................14

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)............................................25

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)...............................................15

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)................... 23-24, 28

*In re AT & T Corp.,* 455 F.3d 160 (3d Cir. 2006)..........................................22, 29

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) .............................................23, 30

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009).........................15

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................. 14, 16, 21, 23

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001).........................30

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .................18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).........................................13-15, 17-18, 20-21, 23

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010)...........................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,

148 F.3d 283 (3d Cir. 1998) .................................................................11, 18, 20-21, 23, 30

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). ........................................29

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)..........................13-15, 20-21

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999).............................................24

*Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131 (3d Cir. 2011)..................................23, 30

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990)............................................16

*Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) ..........................................30

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ....................................14

**United States District Court Cases:**

*Bonett v. Educ. Debt Servs.*, No. 01–6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) ............17

*Boone v. City of Philadelphia*, 668 F. Supp. 2d 693 (E.D. Pa. 2009)............................................21

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ................................................................25

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000)................................................32

*First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301 (D. Mass. 1987) .......14

*Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154 (E.D. Pa. 2011)............................................11

*In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010)..........................................................15, 18, 21

*In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003)...............................11, 25

*In re Greenwich Pharm. Sec. Litig.*, CIV. A. 92-3071, 1995 WL 251293
    (E.D. Pa. Apr. 26, 1995) ................................................................25

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004).....................22, 24, 30-31

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................22, 24

*In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-CV-3564,
    2002 WL 188569 (E.D. Pa. Dec. 4, 1998) ................................................................32

*In re Processed Egg Products Antitrust Litig.*, MDL 2002,
    2012 WL 2885924 (E.D. Pa. July 16, 2012)...................................................................17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) .......17, 20

*In re SmithKline Beckman Corp. Sec. Litig.,* 751 F. Supp. 525 (E.D. Pa. 1990)....................25, 28

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ......................................24

*Lachance v. Harrington,* 965 F.Supp. 630 (E.D. Pa. 1997)..........................................................18

*LaGarde v. Support.com, Inc.,* No. 3:12-cv-00609-JSC (N.D. Cal. Feb. 07, 2012)......................29

*Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ..............................................24

*McDonough v. Toys "R" Us, Inc.,* 834 F. Supp. 2d 329 (E.D. Pa. 2011) ......................................21

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003).......................................28

*Orloff v. Syndicated Office Sys., Inc.,* CIV.A.00-CV-5355,
    2004 WL 870691 (E.D. Pa. Apr. 22, 2004) .........................................................................21

*Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005)................................................18

*Pozzi v. Smith,* 952 F.Supp. 218 (E.D. Pa. 1997)........................................................................25

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) ..........................................16, 21

*Seidman v. American Mobile Systems,* 965 F. Supp. 612 (E.D. Pa. 1997)....................................25

*Serrano v. Sterling Testing Sys., Inc.,* 711 F. Supp. 2d 402 (E.D. Pa. 2010)................................21

*Webb, et al. v. cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill. June 17, 2011).............1, 29

*Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297 (D.N.J. 1995)
    *aff'd*, 66 F.3d 314 (3d Cir. 1995) ........................................................................................17

**United States Circuit Court Cases:**

*Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779
    (Cir. Ct. Cook County, Ill. May 6, 2011)...........................................................................1, 29

**Rules:**

Fed. R. Civ. P. 23 .................................................................................................................*passim*

**<u>Miscellaneous Authorities:</u>**

Manual for Complex Litigation § 24.121 (4th ed. 2004) ....................................................... 23

Manual for Complex Litigation § 14.121 (4th ed. 2004) ...................................................... 25

Newberg on Class Actions § 1.18 (4th ed. 2002) .............................................................. 24

Newberg on Class Actions § 11.50 (4th ed. 2002) ............................................................ 14

Newberg on Class Actions § 11.41 (4th ed. 2002) ............................................................ 14

Newberg on Class Actions § 14.03 (3d ed. 1992) ......................................................... 23, 25

## I.    INTRODUCTION

This Settlement is in line with those that have been preliminarily and finally approved by

state and federal courts in similar lawsuits against companies in the computer software repair

industry.[1] In this case, Plaintiff Ledet challenges Defendant Ascentive LLC's ("Ascentive" or

"Defendant") allegedly deceptive design and marketing of its PC SpeedScan Pro, PC Scan &

Sweep, and ActiveSpeed software products, all of which promised to increase the speed,

performance, and security of a consumer's personal computer, but—as Plaintiff alleges—none of

which actually functioned as advertised. After more than two years of litigation and settlement

negotiations, and having participated in three separate mediation sessions with the Honorable

Diane Welsh (ret.), the Parties now seek final approval of the Class Action Settlement

Agreement reached in this case. As explained fully below, the instant Settlement is fair,

reasonable and adequate, satisfies the requirements of Rule 23 and due process, and warrants

final approval by this Court.

On August 29, 2012, the Court granted preliminary approval of the Settlement (Dkt. No.

36, ¶ 2), approving the broad Notice Plan—which consisted of direct notice by email (which

---

[1]    *See, e.g., Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook
County, Ill. May 6, 2011) (Hon. K. Pantle, presiding) (creating $9.75 million settlement fund
from which class members could make a claim for $10 for each software product purchase;
prospective relief requiring Defendant to provide consumers with enhanced disclosures regarding
the functionality and methodology of the software products at issue, as well as certain changes to
the software itself; settlement finally approved on Sept. 13, 2011); *Webb, et al. v. cleverbridge,
Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill. June 17, 2011) (creating $5.5 million settlement fund
from which class members could make a claim for $12.50; prospective relief requiring
Defendants to provide consumers with enhanced disclosures regarding the functionality and
methodology of the software products at issue; settlement preliminarily approved on July 12,
2012); and *LaGarde v. Support.com, Inc.*, No. 3:12-cv-00609-JSC (N.D. Cal. Feb. 7, 2012)
(creating $8.5 million settlement fund from which class members could make a claim for $10 for
each software product purchased; three free months of Support.com's anti-spyware software; and
prospective relief requiring Defendant to provide consumers with enhanced disclosures regarding
the functionality and methodology of the software products at issue, as well as certain changes to
the software itself; settlement awaiting preliminary approval).

reached 70% of the Class Members), the erection of a Settlement Website (which allowed Class Members to download claim forms and review all relevant court documents), and CAFA notice to the relevant governmental agencies[2]—as "the best notice practicable under the circumstances" and finding that it complied fully with both the requirements of Rule 23 and Due Process. (*Id.* ¶ 8.) The Settlement Administrator has successfully implemented the Notice Plan and the deadline for submitting requests for exclusion and objections has now expired. There has been an overwhelmingly favorable reaction by members of the Class to the Settlement. Indeed, not a single Class Member filed an objection.

This response is not surprising given the exceptional results achieved for the Class through the Settlement. First, each Class Member who validly submits a claim form by December 14, 2012 will receive a cash payment of either $10.00 or $18.00 (depending on whether the Class Member purchased Ascentive's support service along with the software) to be distributed from the combined $9,600,000 Settlement Fund. These cash payments are significant—they represent more than a third of the respective costs of Ascentive's software and support services, and more importantly, they represent almost all of the reduced value that Plaintiff Ledet sought to recover in the lawsuit. The Settlement Fund will also be used to pay administrative expenses, the cost of effectuating the Court-approved Notice Plan, an incentive award to the Class Representative, and attorneys' fees and expenses. In addition, the Settlement provides for robust prospective relief that will immediately put a stop to the challenged conduct by requiring Ascentive to (i) not overstate the severity of errors in its software, and (ii) disclose

---

[2]     It is noteworthy that, in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715, notice was sent to the Attorneys General of each state, as well as the Attorney General of the United States, and not a single concern about or objection to the Settlement was raised. To be clear, this is not to say that the Attorneys General approve of the Settlement. Nonetheless, the complete lack of opposition to the Settlement speaks to its strength.

specific, agreed-upon language to consumers about the true functionality and methodology of its software.

The complete absence of objections speaks volumes about the merits of this Settlement. In the end, the results achieved for the Settlement Class and the response thereto all strongly indicate that the Settlement is fair, reasonable and adequate, and warrants final approval. For these reasons, and as discussed further below, Plaintiff respectfully requests that the Court grant final approval of the Parties' Settlement, dismiss all Released Claims with prejudice, and award the agreed-upon incentive award, attorneys' fees, and costs.

## II.     NATURE OF THE LITIGATION

### A.     Plaintiff's Allegations Regarding Ascentive's Use of "Scareware"

On January 18, 2011, Plaintiff filed his Class Action Complaint ("Complaint") against Ascentive in the United States District Court for the Eastern District of Pennsylvania. (A true and accurate copy of the Complaint is attached as **Exhibit 1**; Dkt. No. 1.)

The Complaint alleges that Ascentive advertised its computer-optimization software by baiting consumers with a free "diagnostic scan" of their computers, which Ascentive claimed would identify and remove errors and invalid files to improve the computer's overall performance. (*Id*. ¶ 3.) However, regardless of whether or not problems actually existed on a given consumer's computer, the Complaint alleges that the scan was programmed and designed to *invariably* report the existence of severe errors. (*Id*. ¶ 4.) The Complaint alleges that Ascentive presented these "false positives" to scare consumers into believing that their computers contained harmful threats that could only be fixed by purchasing its $29.95 optimization software. (*Id*.) The Complaint also alleges that Ascentive automatically enrolled its customers into subscription programs without their consent, and thereafter charged and collected annual service fees from

their credit cards and bank accounts.

### B.     Class Counsel's Investigation

Beginning in 2010, Class Counsel began a wide-ranging investigation into the perceived discrepancies between the advertised and actual functionality of Ascentive's software products. (*See* Declaration of Jay Edelson, a true and accurate copy of which is attached as **Exhibit 2**, ¶ 3.) During the course of that investigation, Class Counsel conducted a long-term study of customers' experiences with Ascentive, which included the examination of hundreds of complaints from Ascentive's customers, as well as customer interviews. (Edelson Decl. ¶ 4.)

To assist in the investigation, Class Counsel engaged a computer forensics expert. (*Id*. ¶ 5.) Over the course of several months, the expert performed a series of independent tests in a virtually simulated environment to ensure complete control of extraneous variables. Those tests included the following:

- determining the source of errors detected by Ascentive's software;

- verifying whether errors identified by Ascentive's software were in fact causing the user's computer to perform poorly;

- viewing timestamps (benchmarks informing the software whether/when to indicate additional errors) placed on the user's computer by Ascentive's software to evaluate whether errors were artificially inflated;

- installing, uninstalling, and re-installing Ascentive's software on a brand new computer system to determine whether false positives were detected; and

- contrasting errors detected pre-registration (i.e., before purchase of Ascentive's software) with errors identified post-registration.

(Edelson Decl. ¶ 5.)

After reviewing the results of the expert's investigation detailed above and assessing them against Ascentive's representations about the software's utility, Class Counsel determined that the expert's findings were consistent with consumer complaints they had reviewed. (*Id*. ¶ 6.)

4

## C.    Litigation and Early Settlement Discussions

On April 6, 2011, counsel for the Parties, as well as Defendant's Chief Executive Officer, Adam Schran, met in Philadelphia, Pennsylvania to discuss the possibility of resolving the lawsuit. (Edelson Decl. ¶ 8.) During that meeting, proposed Class Counsel presented the evidence uncovered by their expert that they believed supported Plaintiff's claims, which Ascentive vigorously disputed. (*Id.*) Despite their extensive and substantive discussions, they were unable to resolve the dispute. (*Id.*)

Ascentive subsequently filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19.) Plaintiff filed his opposition brief on May 31, 2011. (Dkt. No. 24.) Ascentive filed its reply on June 13, 2011. (Dkt. No. 27.) Soon after, however, the Parties decided to renew settlement discussions, and on June 24, 2011, the lawsuit was placed in civil suspense. (Dkt. No. 28.) (Edelson Decl. ¶ 9.)

## D.    Renewed Settlement Discussions and Private Mediation

On September 27, 2011, the Parties participated in a mediation session presided over by the Honorable Diane Welsh (ret.) of JAMS. (Edelson Decl. ¶ 10.) At the mediation, the Parties exchanged information about their underlying factual and legal theories and views about settlement. (*Id.*) The negotiations were extensive and, although professional, at times contentious. Once again, and despite their best efforts and those of Judge Welsh, no agreement was reached at the mediation. (*Id.*)

Notwithstanding this failed attempt to resolve the case, the Parties continued exchanging information in hopes of narrowing the factual and legal issues in dispute. (Edelson Decl. ¶ 11.) Although they were unable to agree on settlement terms, the Parties agreed that an additional mediation session with Judge Welsh might help resolve their conflicting views on the case. (*Id.*)

Accordingly, on November 14, 2011, the Parties participated in a second round of mediation, once again presided over by Judge Welsh. (*Id.* ¶ 12.) During the second mediation, with the guidance of Judge Welsh, the Parties were able to sufficiently bridge the gap between their positions and reach an agreement on an appropriate settlement structure. (*Id.*)

Thereafter, the Parties participated in a third mediation session (this time telephonically), and with Judge Welsh's continued assistance, the Parties were able to reach an agreement in principle with respect to the relief due to the Settlement Class. (*Id.* ¶ 13.) The Parties did not begin negotiations regarding attorneys' fees or an incentive award until after a complete agreement was reached on class relief. (*Id.*) It took several weeks of negotiations before the Parties reached agreement on these final points, and only after Judge Welsh made a mediator's proposal, which both Parties accepted on December 9, 2011. (*Id.*)

## III.   TERMS OF THE SETTLEMENT[3]

The key terms of the Settlement Agreement are as follows:

**A.   Class Definition.** The Settlement Class encompasses all Persons in the fifty (50) states, the District of Columbia, and the territories of the United States of America who have purchased an Ascentive Product or Ascentive Service (as defined by the Settlement Agreement) at any time up to and including the date of entry of the Preliminary Approval Order. (Settlement Agreement, ¶ II.29.)

Excluded from the Settlement Class are (i) Persons who have validly excluded themselves from the settlement; (ii) the legal representatives, successors or assigns of any such excluded persons; (iii) the Claims Administrator; (iv) Class Counsel; (v) Defendant, its officers, directors and employees, and any parent, subsidiary, affiliate or control person of the Defendant;

---

[3]     The terms of the Settlement are set forth in their entirety in the Parties' Settlement Agreement and Release, attached hereto as **Exhibit 3**.

(vi) any judge presiding over the Action; (vii) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant; and (viii) the immediate family members of any such Person(s).

**B.     Monetary Relief.**  Ascentive has agreed to establish two funds in the collective amount of $9.6 million. (Settlement Agreement ¶¶ II.24, II.31, II.32.) The $6 million Products Fund will pay for claims for Products Payments, the Fee Award, the Incentive Award, and Claims Administration Expenses. (Settlement Agreement, ¶¶ II.24.) The $3.6 million Services Fund will pay for claims for Services Payments. (Settlement Agreement, ¶¶ II.32, VI.B.1.)

1.     Payment of Claims and the Claims Process. To be eligible for a payment pursuant to the Settlement, Settlement Class Members must submit a Claim Form that (i) contains all of the required information set forth in the Claim Form, (ii) satisfies the requirements of the Settlement Agreement and the terms of the Claim Form, and (iii) is submitted by first class mail, postage prepaid, no later than the Claims Deadline. (Settlement Agreement, ¶ VII.A.)

A Settlement Class Member that submits an Approved Claim will be entitled to receive a payment of ten dollars ($10.00) from the Products Fund. (Settlement Agreement ¶ VI.B.1.i.) Furthermore, a Settlement Class Member that submits an Approved Claim along with a signed statement indicating that he or she purchased, but did not use, either of the Additional Services shall be entitled to receive an additional payment of eight dollars ($8.00) from the Services Fund. (Settlement Agreement, ¶VI.B.1.ii.)

**C.     Service Improvements and Assurances.** In addition to the monetary relief described above, the Settlement Agreement provides the following prospective relief:

1.     Software Purchase Agreement/Terms of Use Disclosures.

(a)     As soon as practicable, but in no event later than thirty (30) days

after the Effective Date, and continuing for so long as such statement is accurate,

Ascentive will include in its PC SpeedScan Pro Software Purchase Agreement a

statement substantially consistent with the following:

> Scans conducted with this software may detect computer errors that occur as a natural consequence of routine use of the Microsoft Windows Operating System. In some instances, these errors may be harmless and will not affect the performance or operation of the computer system. Certain computer errors may consistently reappear and thus will be repeatedly detected by the software.

(b)     As soon as practicable, but in no event later than thirty (30)

days after the Effective Date, and continuing for so long as such statement is

accurate, Ascentive will include in its PC Scan & Sweep Software Purchase

Agreement a statement substantially consistent with the following:

> Scans conducted with this software may detect files that are harmless, the presence of which will not affect the performance, operation, or privacy of your computer system.

(c)     As soon as practicable, but in no event later than thirty (30) days

after the Effective Date, and continuing for so long as such statement is accurate,

Ascentive will include in its ActiveSpeed Software Purchase Agreement a statement

substantially consistent with the following:

> Scans conducted with this software detect Internet configuration settings. By default, the Microsoft Windows Operating System sets the values for these configuration settings. The Software may suggest that optimization is required, even though default configuration settings are in place.

(d)     As soon as practicable, but in no event later than thirty (30) days

after the Effective Date, and continuing for so long as such statement is accurate,

Ascentive will include in its Terms of Use a statement directing the consumer to read carefully the disclosures. (Settlement Agreement, ¶ VI.A.i.)

2.　　__Automatic Subscription Renewal Policies__. Until the earlier of three (3) years after the Effective Date or such time as Ascentive ceases to auto-renew licenses for the Software, Ascentive will include on its software purchase checkout webpage(s) and in its Terms of Use or other pertinent agreements, a clear and conspicuous statement containing the following:

(a)　　the fact that the consumer is entering into a license agreement with Ascentive;

(b)　　the fact that the consumer's credit or debit card will be automatically charged on a recurring basis;

(c)　　the date of subsequent automatic renewal charges; and

(d)　　a convenient and simple method to prevent Ascentive from continuing to assess recurring automatic renewal charges.

Ascentive has also agreed to act in good faith in honoring customer requests to discontinue automatic renewal charges. (Settlement Agreement, ¶¶ VI.A.i-ii.)

3.　　__Software Modifications__. Ascentive also agrees to the following restrictions on its software:

(a)　　Ascentive will not overstate the severity of errors, configuration settings, or computer files through statements displayed within the Software using any form of pop-up notice or other Graphical User Interface ("GUI") display screen.

(b)　　Ascentive will not overstate the utility of the Software through any form of pop-up notice or other GUI display screen.

(c)     Ascentive shall not overstate the potential risks of errors and improper configurations of computer files displayed in conjunction with the results of the Software's diagnostic scans through any form of pop-up notice or other GUI display screen.

(d)     Ascentive shall not include graphical depictions within the Software that overstate the volume of harmful computer errors, improper configurations, or other problems present on the user's computer. (Settlement Agreement, ¶ VI.A.iii.)

**D.     Incentive Award for Class Representative**. In addition to any monetary award under the Agreement, and in recognition of his efforts on behalf of the Settlement Class, the Parties have agreed that Class Counsel shall be entitled to apply to the Court for an award for the Class Representative in an amount not to exceed one thousand dollars ($1,000.00) (the "Incentive Payment"). (Settlement Agreement, ¶ XII.B.)

**E.     Attorneys' Fees and Expenses**. Subject to Court approval, Ascentive has agreed to pay Class Counsel one million seventy five thousand dollars ($1,075,000.00) in attorneys' fees and for reimbursement of expenses (including court costs) associated with the Action. (Settlement Agreement, ¶ XII.A.) Class Counsel has, in exchange, agreed to seek, or accept, no more than that amount.

**F.     The Release by Plaintiff and the Settlement Class**. In exchange for the relief described above, Ascentive and each of its related entities and affiliated entities will receive a full release of all claims related to: (i) Ascentive Products and/or Ascentive Services, including but not limited to the marketing, advertising, development, design, programming, distribution, deployment, use, functionality, purchase, or sale thereof; (ii) all warranties, representations or omissions relating to any Ascentive Product and/or Ascentive Service; (iii) all warranties and

representations or omissions relating to any Ascentive Product and/or Ascentive Service that are contained on any website on which Ascentive sells, markets, or advertises Ascentive Products and/or Ascentive Services or any license or subscription for any Ascentive Product and/or Ascentive Service; and (iv) any matters alleged, argued, raised, or asserted in any pleading or court filing in the Action. (Settlement Agreement, ¶¶ II.28, V.1-2.)

## IV.   THE PARTIES' COMPREHENSIVE NOTICE PLAN REACHED SEVENTY PERCENT OF THE CLASS AND COMPLIES WITH DUE PROCESS

In a class action, the court "obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *Hall v. Best Buy Co., Inc.,* 274 F.R.D. 154, 167 (E.D. Pa. 2011) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 306 (3d Cir. 1998)). Thus, due process requires "reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class." *Id.* Accordingly, prior to final approval of a class action settlement, and to fulfill the due process requirements of Rule 23, class members must be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974)). The substance of the notice must describe in plain language the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id.*

In this matter, the notice provided to the Settlement Class comports with the requirements of due process, this Court's Preliminary Approval Order, and Rule 23, and has been fully carried out by

professional settlement administrator Kurtzman Carson Consultants. As ordered by the Court, notice was timely issued to the Settlement Class by the following methods: (i) sending direct notice of the Settlement via electronic mail to the last known e-mail address of each Settlement Class Member, and (ii) posting the "long-form" notice of the Settlement Agreement on the Settlement Website, which was published and maintained by the Claims Administrator. (*See* Declaration of Patrick M. Passarella, a true and accurate copy of which is attached as **Exhibit 4**.) The email notice provided Settlement Class Members with a detailed explanation of their options, allowing them to make a fully informed decision as to participation in the Settlement.

Further, the notices directed Class Members to the "long form" notice on the Settlement Website, which also provided the public with uninterrupted access to all information pertinent to the Settlement and allowed Class Members to (i) download and review relevant court documents, including the Settlement Agreement, Settlement Class Notice, and Preliminary Approval Order, and (ii) print customized Claim Forms for submission. (Passarella Decl. ¶ 11.) (True and accurate copies of the notices and Claim Form are attached as **Exhibits 4-A** through **4-C**.) Finally, the Claims Administrator established and operated a toll-free number whereby Class Members could obtain information about the Settlement, request copies of the notices and Claim Form, and receive assistance with filling out the Claim Form. (*Id*. ¶ 10.)

The Notice Plan took into account that Ascentive required the members of the Settlement Class to provide it with their e-mail addresses when purchasing and downloading Ascentive Product(s) and/or Ascentive Service(s). Thus, direct notice of the settlement via e-mail, combined with the creation of the Settlement Website, constituted the best notice practicable under the circumstances. The Court-approved notices were sent by electronic mail on September 12, 2012

and September 27, 2012, and were received by 70% of the Settlement Class.[4] (*Id.* ¶¶ 3, 7, 9.) Further, on September 12, 2012, the Claims Administrator published notice on the Settlement Website—www.SoftwareSettlement.com. (*Id.* ¶ 11.)

Each form of notice provided to the Settlement Class was neutral in tone and provided the Settlement Class Members with a detailed explanation of their rights under the Settlement, including how to obtain the monetary benefits offered by the Settlement, how to "opt-out" of the Settlement, the Class Member's right to object to the Settlement and how to do so, and how to be heard by the Court. This information provided Class Members with the ability to make an informed decision about their participation in the Settlement. As such, the notice plan comports with Rule 23, due process, and the Court's Preliminary Approval Order.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

There is an "overriding public interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010). Settlement is particularly favored in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); 2 Newberg & Conte § 11.41, at 11-85 (citing cases); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). Parties also benefit from avoiding the costs and risks of a lengthy and complex trial. *In re Gen. Motors* at 768; *see* Newberg & Conte, 2 NEWBERG ON CLASS ACTIONS, §11.50 (4th Ed. 2002) ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to

---

[4]     The Claims Administrator sent notice to the 988,415 e-mail addresses provided by Ascentive. However, due to reasons such as a Class Member's change or deletion of an e-mail address, the notice successfully reached 688,526 of those e-mail addresses.

lengthy and expensive litigation with uncertain results.").

When reviewing a proposed settlement, there exists an initial presumption of fairness where: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)).

**A.** **The Settlement is Deserving of Final Approval As it Satisfies the *Girsh* Test**

As the guardian of the interests of the absent class members, the Court must evaluate each proposed class action settlement to ensure that it is "fair, reasonable, and adequate." *In re. Gen. Motors,* 55 F.3d at 785 (citations and quotations omitted); *see also* Fed. R. Civ. P. 23(e)(1)(A). The Third Circuit identifies nine factors to consider when determining whether a proposed class action settlement is fair, reasonable and adequate: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh v. Jepson,* 521 F.2d 153, 156-57 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004*); In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).

Each of the *Girsh* factors weigh in favor of final approval.

1.   The Complexity, Expense, and Likely Duration of Litigation Justify Final Approval of the Agreement.

The first *Girsh* factor considers "the probable costs, in both time and money, of continued

litigation." *In re Gen. Motors,* 55 F.3d at 812 (citing *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 801 (3d Cir. 1974)). In short, this means the Court should "gauge the benefit of settling the claim amicably" compared with the "costs of continuing on the adversarial path." *In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.,* 269 F.R.D. 468, 484 (E.D. Pa. 2010) (citing *In re Gen. Motors,* 55 F.3d at 812). When looking at the benefits of the Settlement compared to the costs of continued litigation, settlement was the right course.

Here, Plaintiff alleges that the marketing and design of Ascentive's software products were purposefully deceptive and intentionally misleading. Accordingly, continued litigation would necessarily involve an examination of the following issues, which are undoubtedly complex: (i) whether the software at issue had the ability to perform as marketed, (ii) whether Ascentive's marketing representations were misleading or inaccurate, (iii) whether Ascentive purposefully designed its software to deceive consumers into purchasing its products, and (iv) whether Ascentive's conduct was knowing and willful.

As Plaintiff's allegations go to the core of Ascentive's business practices and products, there is little doubt Ascentive would engage in a vigorous defense. Thus, without the Settlement, the expense, duration and complexity of prolonged litigation would be substantial and incredibly burdensome for all Parties. Significant costs would necessarily be incurred were this matter to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad of other costs necessitated by the trial of a class action. Further, evidence and witnesses from across the country would have to be assembled. Given the complexity of the factual and legal issues, as well as the amount in controversy, the defeated party would likely appeal. As such, the relief provided to the Settlement Class weighs heavily in favor of its approval compared to the inherent risks and expense of continued litigation, trial, and appeal. Accordingly, the first *Girsh* factor

weighs in favor of approving the Agreement.

2. <u>Class Members' Reactions to the Settlement Have Been Overwhelmingly Favorable</u>.

The second *Girsh* factor considers the reaction of the Class to the Settlement. Here, Class Members' reactions to the Settlement have been overwhelmingly favorable.

Direct notice of the Settlement has been successfully delivered to over 688,000 class members, and yet there have been no objections. Such a complete lack of opposition to the Settlement speaks to its strength and fairness. *See Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 252 (E.D. Pa. 2011) ("The fact that the settlement is entirely uncontested is considered evidence of its fairness."); *Cendant Corp.,* 264 F.3d at 234–35 ("[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993) (holding that small proportion of objectors constituted tacit consent to settlement); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118–19 (3d Cir. 1990) (finding only twenty-nine objectors from 281-member class "strongly favors settlement"); *Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1301 (D.N.J. 1995) *aff'd*, 66 F.3d 314 (3d Cir. 1995) (holding that "substantial silent consent weighs in favor of certification" where approximately 100 out of 30,000 class members objected or opted out of the class).

Accordingly, the second *Girsh* supports final approval.

3. <u>Class Counsel Had Sufficient Information to Evaluate the Merits and Reasonableness of the Agreement</u>.

The third *Girsh* factor to be considered is the stage of the proceedings and the amount of discovery completed. *See Bonett v. Educ. Debt Servs.,* No. 01–6528, 2003 WL 21658267, at *6

(E.D. Pa. May 9, 2003) (settlement favored where "[t]he parties arrived at an arms-length settlement . . . [with] a clear view of the strengths and weaknesses of their case.") (internal marks and citations omitted). The Third Circuit has recognized that, even if settlement occurs in an early stage of litigation, "there are means for class counsel to apprise themselves of the merits of the litigation, such as 'conduct[ing] significant independent discovery or investigations to develop the merits of their case (as opposed to supporting the value of the settlement)' or retaining their own experts or interviewing witnesses." *In re Processed Egg Products Antitrust Litig.*, MDL 2002, 2012 WL 2885924 (E.D. Pa. July 16, 2012).

Here, even before this lawsuit was filed, Class Counsel conducted an extensive investigation including, but not limited to, engaging its own expert—a leading cyber security researcher—to complete multiple rounds of forensic testing. Further, throughout this litigation, the Parties have continually explored the strengths and weaknesses of their respective claims and defenses through informal discussion and informational exchanges, and through private mediation. (Edelson Decl. ¶ 14.) By doing so, and with the experience and industry knowledge gained through their lawsuits against Defendant's competitors, Class Counsel gained an acute understanding of Plaintiff's and the Class Members' claims. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 541-42 (D.N.J. 1997) *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ("Informal discovery is perfectly adequate to substantiate claims"); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[W]e are not compelled to hold that formal discovery was a necessary ticket to the bargaining table."). Ultimately, with Judge Welsh's assistance, the Parties exchanged and had at their disposal sufficient information from which to evaluate their claims and defenses, and eventually, negotiate the Settlement now before the

Court. (Edelson Decl. ¶ 16.)

Accordingly, the third *Girsh* factor weighs in favor of final approval.

4.  <u>Establishing Liability and Damages Would be Risky and No Easy Task</u>.

The fourth and fifth *Girsh* factors examine Plaintiff's ability to establish liability and damages and are commonly discussed together. These factors call on the district court to inquire as to "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors,* 55 F.3d at 814. Indeed, the fifth *Girsh* factor assesses the "expected value of litigating the action rather than settling it at the current time." *In re Gen. Motors,* 55 F.3d at 816. If it would be difficult for a plaintiff to establish liability, this factor favors settlement. *In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.*, 269 F.R.D. at 487. "The Court need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting *Lachance v. Harrington,* 965 F.Supp. 630, 638 (E.D. Pa. 1997)).

Here, Class Counsel have conducted a thorough investigation into the facts and legal issues of the instant case and believe that continued litigation posed significant risks to the Plaintiff's and the Class Members' claims. Although Counsel is confident in the strength of the claims, the area of law at issue is uncertain. Further, while Class Counsel believes that the claims based on unfair and deceptive business practices have a high likelihood of succeeding on the merits, the evidence and expert opinions required to substantiate these claims would be highly complex. For instance, establishing that Ascentive's products do not perform the advertised

functions poses many challenges, as the technology and algorithms utilized in the software are highly complex and sophisticated. Likewise, establishing that Ascentive's conduct was willful, i.e., that Ascentive intentionally designed its products to artificially exaggerate the number of problems present on a user's computer, is far from certain. Although Class Counsel's extensive investigation into this case supports the existence of the alleged unfair and deceptive business practices, Ascentive has at all times denied these allegations. Accordingly, the difficulty of establishing liability weighs in favor of approval.

Now, considering the relief immediately available to the Class, the Settlement becomes all the more reasonable. Class Members who submit a valid claim are eligible to receive a payment of $10.00 from the Products Fund, and an additional payment of $8.00 from the Services Fund (if they purchased and did not use additional services). Even if the case were successful at trial, the issue of damages would still remain uncertain. Ascentive would argue (and Plaintiff would likely concede) that its software still had some value, even if not the full purchase price it was charging. (Edelson Decl. ¶ 19.) In recognition of the strength of this argument, Class Counsel estimates that, based on market prices, each Class Member likely would be found to have suffered between $10.00 and $20.00. (Edelson Decl. ¶ 20.) The $10.00 and $18.00 cash payments that have already been secured by the Settlement, then, represent between 50% and 80% of what Plaintiff and the Class reasonably could have expected to achieve should they prevail at trial. (Edelson Decl. ¶ 20.) Thus, the value of the Settlement equals or exceeds the expected value of litigating this action, and weighs in favor of approval.

5.     <u>Maintaining Class Action Status Through Trial Would Not Be Certain</u>.

The sixth *Girsh* factor examines the risk of maintaining class action status through trial. "[T]he prospects for obtaining certification have a great impact on the range of recovery one can

expect to reap from the [class] action." *Warfarin,* 391 F.3d at 537 (quoting *In re Gen. Motors,* 55 F.3d at 817). Further, "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *In re Gen. Motors,* 55 F.3d at 817. Accordingly, this *Girsh* "factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Id.* (citing *Prudential,* 148 F.3d at 321).

Here, absent this Settlement, Plaintiff faces the risks attendant with certifying and maintaining an adversarial class. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 540 (D.N.J. 1997) *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (finding even the risk of decertification of a class as weighing in favor of settlement). Plaintiff has not yet filed and the Court has not yet ruled on a motion for class certification. Absent the instant Settlement, Ascentive would vigorously oppose any motion for class certification, and the risk of losing the ability to settle claims as a Class would be substantial. Thus, the sixth *Girsh* factor weighs heavily in favor of approval.

6.      Ascentive's Ability To Withstand a Greater Judgment Is Not an Issue.

The seventh *Girsh* factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant,* 264 F.3d at 240. The ability of defendants to withstand a greater judgment generally "only comes into play when 'a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.'" *McDonough v. Toys "R" Us, Inc.,* 834 F. Supp. 2d 329, 338 (E.D. Pa. 2011) (citing *Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)). Here, there is no real issue regarding Ascentive's ability to pay and

the relief achieved by the Settlement is not limited due to Ascentive's financial circumstances.

*See In re CertainTeed Corp. Roofing Shingle Products Liab. Litig*., 269 F.R.D. at 489

("[B]ecause ability to pay was not an issue in the settlement negotiations, this factor is neutral.");

*Serrano v. Sterling Testing Sys., Inc.,* 711 F. Supp. 2d 402, 416 (E.D. Pa. 2010) ("There is no

evidence regarding Sterling's ability (or inability) to withstand a greater judgment. As such, this

factor is neutral."). Thus, this factor neither weighs in favor of nor against final approval.

       7.    <u>The Settlement Fund is Within the Range of Reasonableness In Light of the Recovery and the Attendant Risks of Litigation</u>.

The final two *Girsh* factors "test two sides of the same coin: reasonableness in light of the

best possible recovery and reasonableness in light of the risks the parties would face if the case

went to trial." *Warfarin,* 391 F.3d at 538 (citing *Prudential,* 148 F.3d at 322). "The

reasonableness of a proposed settlement depends in part upon a comparison of the present value

of the damages the plaintiffs would recover if successful, discounted by the risks of not

prevailing." *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *In re

General Motors,* 55 F.3d at 806). The Court may give credence to the opinions of experienced

attorneys in assessing this comparison. *Orloff v. Syndicated Office Sys., Inc.,* 2004 WL 870691 at

*7 (E.D. Pa. Apr. 22, 2004) "Further, the fact that a proposed settlement may amount to a

fraction of the best possible recovery does not, without more, mean that the proposed settlement

is inadequate." *Linerboard,* 321 F.Supp.2d at 632 (citation omitted).

As previously discussed above under the analysis of the fourth and fifth *Girsh* factors,

continued litigation would be risky to both Parties and the instant Agreement is fair and

reasonable in light of these risks. Plaintiff still faces significant legal and evidentiary hurdles,

including defeating Ascentive's motion to dismiss, prevailing on a motion for class certification,

and proving Ascentive's conduct was willful, among other things. Even if Plaintiff and the Class

were to recover at trial, the amount recovered would likely be similar to or perhaps less than the amount provided under this Settlement. Further, Ascentive can assert an arguably strong defense based on *quantum meruit*, further reducing the amount of damages that Class Members would likely receive.

In light of these risks and the best possible recovery achievable at trial, the Settlement is reasonable and is in line with settlements against Defendant's industry competitors that were either preliminarily or finally approved by the state and federal courts in which they are or were pending. *See, e.g.*, *Drymon,* No. 11 CH 16779 (Cir. Ct. Cook County, Ill. May 6, 2011); *Webb,* No. 1:11-cv-04141 (N.D. Ill. June 17, 2011); *LaGarde*, No. 3:12-cv-00609-JSC (N.D. Cal. Feb. 7, 2012) (settlement awaiting preliminary approval). Thus, these final *Girsh* factors also weigh in favor of approval.

## VI.    THE AGREED-UPON ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

The Parties have agreed on the amount of attorneys' fees and unreimbursed expenses to be paid to Class Counsel in the instant matter, subject to the Court's approval. Although the Court has discretion over the amount of attorneys' fees to be awarded, courts strongly encourage negotiated fee awards in class action settlements, as they are more favorable than continued litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.").

To determine the appropriate amount of attorneys' fees, courts in this Circuit have discretion to apply either the percentage-of-recovery method or the lodestar method. *See In re AT & T Corp.,* 455 F.3d 160, 164 (3d Cir. 2006) ("The percentage-of-recovery method applies a certain percentage to the settlement fund," while "[t]he lodestar method multiplies the number of

hours class counsel worked on a case by a reasonable hourly billing rate for such services."); *see also Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131, 135 (3d Cir. 2011). Commentators discussing fee awards have noted that "one purpose of the percentage method" of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—"is to encourage early settlements by not penalizing efficient counsel. . . ." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citing Manual for Complex Litigation, *supra*, § 24.121, at 207, citing 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14.03, at 14-3 to 14-7 (3d ed. 1992)).

Operating as an exception to the American Rule, the common fund doctrine "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (citing *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 187 (3d Cir. 2005)) (internal quotations and citations omitted). The percentage-of-recovery method has long been preferred in the Third Circuit in common-fund cases. *See, e.g., Gunter,* 223 F.3d at 195 n. 1; *Brytus v. Spang & Co.,* 203 F.3d 238, 243 (3d Cir. 2000); *In re GM Trucks,* 55 F.3d 768, 821 (3d Cir. 1995); *In re Prudential,* 148 F.3d at 333-34 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotations and citations omitted). In this case, because the Class Representative and Class Counsel have secured and made available a $9,600,000 common fund for the benefit of the Class, the percentage-of-

recovery method should be used to determine the reasonableness of the agreed-upon fees.[5]

In assessing the reasonableness of attorneys' fees in common fund cases, the Third Circuit has directed district courts to consider the following seven factors: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter,* 223 F.3d at 195 n.1 (the "*Gunter*" factors).

The Third Circuit also recommends that district courts employ a lodestar crosscheck in common fund cases using the percentage-of-recovery method. *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. June 2, 2004). Here, the Parties' agreed-upon attorneys' fees are reasonable under both methods and should be approved.

### A. The Agreed-Upon Fee of $1,075,000 Represents 11% of the Cash Benefit to the Class and Is Reasonable Under the *Gunter* Factors

Most courts, including several in the Third Circuit, consider 25% of the fund to be the "benchmark" figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002) *aff'd* 391 F.3d 516 (3d Cir. 2004); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 341 (W.D. Pa. 1997) *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999); *Seidman v. American Mobile Systems,* 965 F.Supp. 612, 622 n.7 (E.D. Pa.

---

[5]     Under the percentage-of-recovery approach, the Court should look at the amount of fees requested in relation to the total settlement benefits conferred, regardless of whether those benefits are actually claimed. *See e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); 2 NEWBERG § 1.18 ("[I]t is now settled that class counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members.").

1997); *Pozzi v. Smith,* 952 F. Supp. 218, 225 (E.D. Pa. 1997); *see also In re Mexico Money Transfer Litig. (W. Union & Valuta),* 64 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000) (30% is the "benchmark for an award of fees in class actions"); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121, at 188 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund"); 3 H. Newberg, NEWBERG ON CLASS ACTIONS (3d ed. 1992) at § 14.03, p. 14–13 to 14–14 (normal range of common fund fee awards is 20–30%).

A review of recent decisions in this Circuit shows that fees of between 25% to 30% of the settlement fund are regularly awarded. *See Pozzi,* 952 F.Supp. at 225 (adopting 25% as benchmark for attorney fees); *In re Greenwich Pharm. Sec. Litig.*, CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) at *6–7 (awarding fee of 33.3% and noting that median award is about 25%); *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F. Supp. 525, 533 (E.D. Pa. 1990) (noting range of fees from 19–45%, with benchmark being 25%); *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007) (approving a 35% award for a $39,750,000 common fund); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d at 497 (approving a 33.3% award for a $7,000,000 common fund).

In this case, the Settlement—excluding the value of the injunctive relief[6]—creates a combined Settlement Fund of $9,600,000 to pay claims, notice and administration costs, fees, and the incentive award. The negotiated fee award of $1,075,000 is thus eminently reasonable as it represents only 11% of the monetary benefit to the Class. Ultimately, applying the common benefit approach here not only suggests that Class Counsel's fee request is reasonable, but that a

---

[6]     Non-monetary benefits created by a class action settlement are also properly considered for purposes of determining fees. *Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (noting the common fund doctrine "must logically extend[s], not only to litigation that confers a monetary benefit on others but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others.'").

considerably larger fee would be warranted. Nevertheless, Class Counsel have agreed to limit their request for attorneys' fees and expenses to the amounts sought herein, and their request falls well within the range approved by district courts within this jurisdiction and may properly be approved by this Court. And, as set forth below, the requested fees are also reasonable when analyzed under the *Gunter* factors.

      1.    <u>The Size of the Fund Created and the Number of Persons Benefited.</u>

The Settlement creates a combined fund of $9,600,000 for a Class of approximately 988,000 individuals. This equals nearly $10 for each Settlement Class member, and represents one third of the purchase price each person paid for Ascentive's software product. Further, direct notice reached 70% of all Class members. In light of the significant monetary relief and the hundreds of thousands of Class members that stand to benefit, the first *Gunter* factor weighs in favor of approval.

      2.    <u>There Have Been No Objections To The Settlement Terms Or Counsel's Fee Request.</u>

The reaction of the Class has been overwhelmingly favorable, both to the Settlement generally and Class Counsel's fee request specifically. The notice fully informed Class Members of the terms of the Settlement, including the monetary relief available, the injunctive relief for the benefit of the Class and public at large, the scope of the release, the amount of fees requested, and the right to object to the Settlement and how to do so. With the full details of the Settlement available, and notice having reached 70% of the Class, the complete absence of objections to the Settlement or fee request is telling of the Class' positive reaction. Accordingly, the complete absence of objections from the Class supports approval of the requested fees.

      3.    <u>Class Counsel Have Extensive Experience in Similar Litigation and Were Efficient in This Matter.</u>

Class Counsel regularly engage in major complex litigation and have extensive

experience prosecuting consumer class action lawsuits of similar size and complexity, including

prosecuting nearly a dozen cases involving fraudulent software marketed and sold by

Defendant's industry competitors. (Edelson Decl. ¶ 15); *see also* Firm Resume (attached as

**Exhibit 2-A**). Counsel leveraged their considerable experience to obtain favorable settlement

terms on behalf of Plaintiff and the Class. Further, Counsel were efficient in their litigation of

this matter, choosing to participate in informal discovery and private mediation sessions

whenever possible, and electing to place the case in civil suspense as negotiations between the

Parties continued. Accordingly, this factor favors approval of the requested fees.

    4.    <u>Litigation Was Complex and Lasted Nearly a Year.</u>

This case is a complex action involving sophisticated software and technology. Further,

this action was zealously litigated for close to a year, which involved motion practice attacking

the pleadings. Parties also exchanged multiple rounds of informal discovery, and participated in

several sessions of extensive, and at times, contentious, mediation with Judge Welsh.

The litigation further dealt with numerous complex issues of law and fact. Counsel

engaged in extensive pre-suit investigation, including engaging the services of a computer

forensics expert to conduct multiple rounds of forensic testing. Class Counsel also examined

numerous consumer complaints, reviewed Ascentive's marketing and sales materials, and

engaged in an on-going, informal exchange of information with Ascentive's counsel over the

course of nine months. Given the complexity of the issues and Counsel's extensive investigation

into the facts, as well as Counsel's participation in numerous rounds of informal discovery and

mediation, this *Gunter* factor also weighs in favor of approval.

    5.    <u>The Risk of Non Payment.</u>

Although there is a risk of non-payment in any action involving contingency fees, this

Court has held that this *Gunter* factor relates to whether the defendant is in a precarious financial position. *See Gunter,* 223 F.3d at 199 (finding risk of non-payment to be high when "the defendants were close to insolvency"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("[Defendant] is financially stable and no one has questioned its ability to pay. This factor is not relevant in this case."). As Ascentive's ability to pay is not in question in this Settlement, this factor should not be controlling in the Court's analysis.

6.      Plaintiff's Counsel Devoted Substantial Time and Resources to This Case.

Plaintiff's counsel devoted a substantial amount of time and resources to litigating this case (over 1400 hours). (Edelson Decl. ¶ 20.) The time expended on this case represents a substantial commitment to this litigation, and in light of the defenses mounted by Ascentive and the complexity of the issues, was necessary for the successful prosecution of this case. Thus, this factor weighs in favor of approval.

7.      Counsel's Fee Request Is Well Below Fees Granted in Similar Cases.

Given that courts in this district have adopted a 25% "benchmark" for attorney fee awards in common fund cases, *see Pozzi,* 952 F.Supp. at 225, Class Counsel's fee request of 11% falls well within the range of approval. Additionally, Counsel's request is based only on a percentage of the monetary benefit conferred upon the Class and does not take into account the non-monetary benefits—such as the substantial prospective relief granted by the Settlement.

Further, Counsel's 11% fee request is especially reasonable when compared to the settlements that have recently been reached with Defendant's industry competitors. *See, e.g.*, *Drymon,* No. 11 CH 16779 (Cir. Ct. Cook County, Ill. May 6, 2011) (awarding counsel's fee request of $1,625,000, which equaled 17% of the $9.75 million fund); *Webb*, No. 1:11-cv-04141 (N.D. Ill. June 17, 2011) (granting preliminary approval of a settlement that allows plaintiffs'

counsel to submit a fee request for $1.2 million, which equals 22% of the $5.5 million fund); *LaGarde*, No. 3:1-cv-00609 (N.D. Cal. Feb. 7, 2012) (awaiting preliminary approval of a settlement that allows plaintiff's counsel to submit a fee request for $900,000, which equals 11% of the $8.5 million fund).

Accordingly, this factor weighs in favor of approval.

### B.     The Agreed-Upon Fee is Also Reasonable Under the Lodestar Method

The agreed-upon attorneys' fees are also reasonable under the lodestar method. The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services. *In re AT & T Corp.,* 455 F.3d 160, 164 (3d Cir. 2006). "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *Id*. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306 (3d Cir. 2005).

Although "the multiplier need not fall within any pre-defined range," *id.* at 307, courts in this Circuit have approved multipliers of 2.99 in even relatively simple cases. *See Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011); *see also In re Linerboard Antitrust Litig*., 2004 WL 1221350, at *14 (E.D. Pa. Jun. 2, 2004) (recognizing that from 2001 to 2003, the average multiplier in common fund cases was 4.35); *In re Diet Drugs*, 582 F.3d 524, 545 (3d Cir. 2009) (citing *In re Cendant Corp. PRIDES Litig*., 243 F.3d 722, 742 (3d Cir. 2001)) ("strongly suggest[ing]" a multiplier of 3 as the ceiling for an award in a simple case where "no risks pertaining to liability or collection were pertinent"); *Prudential,* 148 F.3d at 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotation and citation omitted).

As detailed in the attached declarations, Class Counsel's lodestar as of October 31, 2012 is $619,930.37 and is summarized by the following chart:

| LAW FIRM | HOURS | EXPENSES | ADJUSTED LODESTAR |
|---|---|---|---|
| Edelson McGuire, LLC | 1,490.90 | $34,425.07 | $616,299.07 |
| Caroselli Beachler McTiernan & Conboy LLC | 7.6 | $461.30 | $3,631.30 |
| **TOTAL** | **1,498.50** | **$34,886.37** | **$619,930.37** |

(Edelson Decl. ¶ 27.)

The above attorney time was reasonably spent and necessary for the successful prosecution of this case. Given the contingent nature of the fee award, Class Counsel had no incentive associated with overbilling or expending unnecessary time or resources. Nevertheless, in recognition that complete efficiency cannot always be achieved, Class Counsel reduced its base lodestar to account for any unintended inefficiencies. Accordingly, the above attorney time is adjusted inasmuch as Class Counsel has exercised billing judgment, resulting in a reduction to the lodestar of 5%. (*Id.* ¶ 24.) The attorney and staff rates used to calculate these figures are comparable to those charged by attorneys with similar experience, skill, and reputation for similar services in comparable legal markets, are the same as those charged to hourly-paying clients,[7] and have been approved by state and federal courts throughout the nation as reasonable. (*Id.* ¶ 30.)

This amount reflects time spent by a team of lawyers who researched, filed, litigated, negotiated, mediated, and ultimately finalized the Agreement to the benefit of the Class.

---

[7]    See *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (where the base lodestar is reflective of the rates charged to hourly-paying clients, there is a presumption of reasonableness).

(Edelson Decl. ¶ 30.)[8] Given the significant expenditure of time and effort by Counsel on behalf of the Class, the percentage of the fund requested—11%—reflects a multiplier of 1.73 (an amount well below the average multiplier of three approved by other courts in this Circuit in common fund cases). Class Counsel also advanced a total of $34,425.07 in un-reimbursed third-party expenses in connection with the prosecution of this case. (Edelson Decl. ¶ 25.)

Even before considering the expenses Class Counsel expended in prosecuting this matter, it is apparent that a multiplier of 1.73 to Counsel's base lodestar is warranted. The risk of recovering nothing was significant, especially because Plaintiff's claims were largely untested, the amount in controversy was substantial, and Counsel agreed to undertake this litigation knowing they would face a vigorous opposition by highly experienced defense counsel. (*Id*. ¶ 28.) Similarly, Class Counsel's analysis of novel legal and factual issues, significant pre-suit investigation, and careful and extended negotiation of the Settlement were all necessary to achieve the substantial benefits now available to and claimed by the Class. (*Id*. ¶ 29.) Given the breadth and complexity of this litigation and of the Agreement, the amount of time spent was reasonable and weighs in favor of the Court's approval of Class Counsel's fee request.

## VII.    THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD

Subject to the Court's approval, the Agreement provides that Plaintiff Douglas Ledet shall receive an incentive award of one thousand dollars ($1,000.00) to be paid out of the Settlement Fund. (Settlement Agreement, ¶ XII.B.) "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D. Pa. 2000)

---

[8]    Class Counsel's lodestar does not include time for (i) preparation for the Fairness Hearing, (ii) appearance at the Fairness Hearing, and (iii) communications with Class members who call Class Counsel with questions regarding the Settlement and the submission of claims.

(internal citations omitted); *see In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. June 2, 2004) at *18 (citing *In re Plastic Tableware Antitrust Litig.,* 2002 WL 188569 (E.D. Pa. Dec. 4, 1998)) ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.").

Here, Douglas Ledet's involvement was critical to the resolution of this litigation and ultimate success of the Agreement. (Edelson Decl. ¶ 31.) Plaintiff assisted counsel by helping in the investigation of his claims and providing counsel with valuable information relating to his purchase and use of Ascentive's software. (*Id.*) Plaintiff's willingness to make the time commitment and undertake the responsibilities and risks involved in bringing a representative action resulted in substantial benefit to his fellow Class members. Accordingly, the agreed-upon incentive award is reasonable and should be approved.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) granting final approval of the Agreement; (b) dismissing all Released Claims with prejudice; (c) approving the negotiated attorneys' fees and incentive award; and (d) granting such other and further relief as the Court deems reasonable and just.

Dated: October 31, 2012

Respectfully submitted,

DOUGLAS LEDET, individually and
on behalf of all others similarly situated,

By: /s/ Ari J. Scharg
One of Plaintiff's Attorneys

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
cgivens@edelson.com

David S. Senoff
Richard C. Defrancesco
CAROSELLI BEACHLER MCTIERNAN & CONBOY LLC
1500 Walnut Street, Suite 507
Philadelphia, Pennsylvania 19102
Tel: (215) 609-1350
Fax: (215) 609-1351
dsenoff@cbmclaw.com
rdefrancesco@cbmclaw.com

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, certify that, on October 31, 2012, I served the above and foregoing ***Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement***, by causing true and accurate copies of such papers to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 31st day of October, 2012.

/s/ Ari J. Scharg